Dissenting opinion filed by Circuit Judge NEWMAN.
MOORE, Circuit Judge.
Salesforce.com, Inc. and other defendants (collectively, Defendants)[1] appeal from the district court’s order denying their joint motion to stay VirtualAgility Inc.’s (VA) patent infringement lawsuit against Defendants pending post-grant review of the validity of VA’s asserted claims under the Transitional Program for Covered Business Method Patents (CBM program). We reverse.
BACKGROUND
In January 2013, VA sued Defendants alleging infringement of U.S. Patent No. 8,095,413 (’413 patent). On May 24, 2013, Salesforce filed a petition with the Patent Trial and Appeal Board (PTAB) for post-grant review of all claims of the '413 patent under the CBM program. In the petition, Salesforce argued that all claims of the '413 patent were eligible for this form of post-grant review because they are di *1309 rected to a “covered business method patent” within the meaning of § 18(a)(1) of the America Invents Act (AIA), Pub L. No. 112-29, 125 Stat. 284, 329-31 (2011), and that Salesforce had standing to bring the petition because it was sued for patent infringement, AIA § 18(a)(1)(B). Sales-force further argued the PTAB should institute CBM review because all the claims of the '413 patent were more likely than not patent-ineligible under 35 U.S.C. § 101 and invalid under 35 U.S.C. §§ 102, 103 in view of several prior art references.
On May 29, 2013, Defendants filed a motion to stay district court proceedings pursuant to AIA § 18(b)(1). See Defendants’ Joint Motion To Stay Proceedings, Virtual-Agility Inc. v. Salesforce.com, Inc., 13-cv-00111 (E.D.Tex. May 29, 2013), ECF No. 67. In August 2013, while this motion was pending, the district court issued a discovery order and held a scheduling conference, setting an April 2014 date for a claim construction hearing and a November 2014 date for jury selection. Also in August 2013, VA filed a Preliminary Response in opposition to Salesforce’s petition at the PTAB pursuant to 37 C.F.R. § 42.207(a). In November 2013, the PTAB granted-in-part Salesforce’s petition based on its conclusion that all claims of the '413 patent are directed to a covered business method, and are more likely than not patent-ineligible under 35 U.S.C. § 101 and invalid under § 102 as anticipated by U.S. Patent No. 5,761,674 (Ito). The PTAB also issued its own scheduling order, setting a July 2014 date for a trial on the validity of the '413 patent claims.
In early January 2014, the district court denied Defendants’ motion to stay the case pending CBM review. VirtualAgility Inc. v. Salesforce.com, Inc., 13-cv-00111, 2014 WL 94371 (E.D.Tex. Jan. 9, 2014). Defendants timely filed an interlocutory appeal to this court, and also filed motions to stay district court proceedings pending the disposition of this appeal with the district court and this court. While these motions were pending, VA filed a Motion to Amend the '413 patent claims with the PTAB contingent on the claims’ invalidation. PTAB No. CBM2013-00024, Paper 26 (Jan. 28, 2014). In February, we issued an order staying proceedings in the district court pending our disposition of Defendants’ motion to stay pending appeal. VirtualAgility Inc. v. Salesforce.com, Inc., 14-1232 (Fed.Cir. Feb. 12, 2014), ECF No. 34. Pursuant to our order, the district court entered the stay pending appeal.
DISCUSSION
We have jurisdiction over this appeal under AIA § 18(b)(2), which provides that “[a] party may take an immediate interlocutory appeal from a district court’s decision” granting or denying a motion to stay litigation pending CBM review. The statute instructs the district court to consider the following four factors when deciding whether to grant a stay:
(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
(B) whether discovery is complete and whether a trial date has been set;
(C) whether a stay, or the denial thereof, would unduly prejudice the nonmov-ing party or present a clear tactical advantage for the moving party; and
(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.
AIA § 18(b)(1). The statute further provides that we “shall review the district court’s decision to ensure consistent application of established precedent, and such review may be de novo.” Id. § 18(b)(2) (emphasis added).
I. Standard of Review
The parties dispute the standard of review that we should apply to this case. *1310 Defendants contend that the statute “encourages full de novo review where factual evidence and conclusions of law are reviewed fully and independently.” Appellant’s Br. 15. YA responds that we should review the order denying a stay with deference because such decisions implicate district courts’ management of their own dockets, which is a matter traditionally left to their discretion. We note that prior to the AIA, district court decisions on motions to stay pending U.S. Patent and Trademark Office (PTO) proceedings were generally not appealable and, when they were, we reviewed them under the abuse of discretion standard. Procter & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 845, 848-49 (Fed.Cir.2008); see also Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). We also note that the AIA expressly created an immediate right of appeal of stay decisions pending CBM review, gave us jurisdiction over the interlocutory appeals, and that the only standard mentioned in the statute is de novo review. Nevertheless, we need not resolve this dispute because we hold that, even under the abuse of discretion standard argued for by VA, the district court’s decision to deny a stay pending the PTAB’s review of the '413 patent claims under the CBM program must be reversed. Nothing in this opinion should be read as deciding the standard of review applicable to the ultimate stay decision or the individual factors. We leave it to a future case to resolve what Congress meant when it indicated that our “review may be de novo.”
II. Factors (A) and (D): Simplification of Issues and Reduced Burden of Litigation
The district court concluded that the first factor — simplification of the issues— was “essentially neutral, if not slightly against” granting a stay because it was “not convinced” by the PTAB’s assessment that cancellation of some or all of the claims during CBM review was “probable.” VirtualAgility, 2014 WL 94371, at *2, *5. The district court reviewed the lengthy prosecution history that the '413 patent underwent before issuance. The court was persuaded that “there can be little dispute here about the thoroughness of the PTO’s prior examination of the '413 patent, given the various grounds of invalidity and the breadth of prior art references considered by the PTO before issuing this patent.” Id. at 3. The court then performed its own evaluation of the bases upon which the PTAB granted the CBM petition. The court stated that, even though the Ito patent had never been before the PTO, it was not persuaded that Ito anticipates all of the claims given the PTO’s extensive review of other prior art during “a lengthy prosecution process.” Id. The court also concluded that the value of the PTAB’s consideration of Ito was “marginal” because Defendants introduced two other pieces of prior art in the district court proceedings — which, they represented, were “of particular importance” — that Sal-esforce did not include in its CBM petition. Id. With regard to the PTAB’s decision to review whether the '413 patent claims are patent-ineligible, the court observed that the claims were amended during prosecution to overcome an earlier § 101 rejection. Based on its assessment of the claims and the law of § 101, the court “was not persuaded that the PTAB will likely cancel all claims of the '413 patent” as patent-ineligible. Id. at 4. In spite of the PTAB’s grant of the CBM petition, finding that all the claims of the '413 patent were more likely than not invalid on two different grounds, the district court concluded that it was not convinced that the PTAB would cancel some or all of the '413 patent claims. The court further concluded that it was not convinced that the CBM review would sim *1311 plify the issues in this case and that, therefore, this factor was “neutral, if not slightly against, granting a stay.” Id. at 5.
The court determined that the parties’ arguments regarding the fourth factor-burden of litigation — “substantially overlap” with those presented under the first factor. It found that “the specific circumstances in the instant case present only a limited possibility” of a reduced burden on the court and the parties. Id. at 8. The court therefore concluded that the fourth factor “weighs only slightly in favor of a stay.” Id.
After the court denied the motion for a stay, VA filed proposed claim amendments in the CBM review. Defendants filed a motion to, at least, stay district court proceedings pending appeal of the denial of the motion to stay. Defendants argued that the fact that VA has already filed a motion to amend claims in the CBM proceeding increased the likelihood that the CBM proceeding will simplify issues. In its decision denying the motion to stay pending appeal, the court observed that VA’s proposed amendments to the '413 patent claims in the CBM proceeding were not a part of the record at the time of its decision on the motion now on appeal. See VirtualAgility Inc. v. Salesforce.com, Inc., 13-cv-00111, 2014 WL 807588 (E.D.Tex. Feb. 27, 2014). On the merits, the court concluded that Defendants “made no attempt at showing how ... conditions triggering the amendments would likely arise” and have not “challenged [its] previous finding that cancellation of some or all the claims was unlikely.” Id. at 2. The court also noted that, “[t]o the extent any further statements [by VA] or amendments to claims may. affect [its] claim construction, such is fully remediable with supplemental claim constructions.” Id. at 3. Thus, the court concluded that the fact that VA moved- to amend the claims in the CBM proceeding did not affect its determination regarding the first and fourth factors.
On appeal, Defendants contend that the district court made “critical errors” in finding the first factor neutral or slightly against the stay. Defendants argue that CBM review will simplify and streamline issues for trial because the district court would not need to address any claims that are cancelled and because Defendants will be estopped from challenging the validity of the '413 patent in view of § 101 and the Ito patent after the review is concluded.[2] Defendants further argue that claim amendments during CBM review may eliminate infringement arguments and give rise to intervening rights. They contend that the district court should not have second-guessed the PTAB’s conclusion that all '413 patent claims are “more likely than not” anticipated by Ito and invalid under § 101.
Defendants also argue that the fourth factor likewise strongly favors a stay because CBM review may spare Salesforce’s customers, who have. also been sued by VA, from discovery, while “the true parties in interest” focus on the validity of the '413 patent at the PTAB. They argue that a stay will further reduce discovery burdens on third parties. Finally, they contend that the district court erred by conflating the fourth factor with the first factor and by giving it too little weight.
VA counters that a stay will not significantly simplify this case or reduce the *1312 burden on the court and the parties. As an initial matter, VA contends, that we should not take into account its Motion to Amend because it was not a part of the record below. VA asserts that, while the motion to stay litigation pending CBM review was pending, it told Defendants that it might move to amend the claims. It contends that, because Defendants did not notify the district court about VA’s possible amendments, they waived any argument about the Motion to Amend. On the merits, VA points out that > the motion seeks to amend only seven of the twenty-one asserted claims and that the amendments may not necessarily be entered for any of the claims. It contends that the proposed amendments merely clarify the claim language and are not related to claim construction disputes currently before the district court, and thus would not significantly impact the litigation.
VA also argues that a stay is unlikely to meaningfully simplify the case because invalidity issues not before the PTAB, as well as infringement and damages issues, will remain as long as a single claim survives CBM review. It contends the PTAB’s § 101 review is also unlikely to simplify the case because patent-eligibility analysis is generally not resource-intensive. VA contends that the district court’s conclusion that the claims would likely survive the PTAB’s scrutiny was reasonable based on its assessment of § 101 law. Further, VA argues that there is a “palpable risk” that we would vacate the PTAB’s decision to initiate CBM review of the '413 patent under the Administrative Procedure Act (APA) because it is not a “covered business method patent” within the meaning of § 18(d)(1) of the AIA. It argues that Defendants’ assertion that PTAB review would simplify litigation is contrary to trial court experience, and that the district court therefore properly rejected Defendants’ “generic” arguments that a stay pending CBM review would promote efficient adjudication in this case. VA contends that Salesforce’s arguments about its customer defendants and third parties were not properly preserved for appeal. It argues that, in any event, the customers are the true parties in interest because they partner with Salesforce, and that a stay would not reduce a burden on third parties because most third-party discovery has already taken place.
We conclude that it is proper for us to consider the fact that VA filed a Motion to Amend in our review of the district court’s decision. Defendants did not waive the arguments regarding claim amendments. They argued to the district court that claim amendments during PTAB review are a distinct possibility and, in doing so, gave VA an opportunity to respond to this argument below. Defendants’ Joint Motion To Stay Proceedings at 7-8.
We also conclude that we are not improperly expanding the record on appeal if we consider the Motion to Amend. See Moore U.S.A, Inc. v. Standard Register Co., 229 F.3d 1091, 1116 (Fed.Cir.2000) (citing Fed. R.App. P. 10(a)). We are mindful that “[a]n appellate court may consider only the record as it was made before the district court.” Ballard Med. Prods. v. Wright, 821 F.2d 642, 643 (Fed.Cir.1987); see also Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed.Cir.1997) (“No matter how independent an appellate court’s review of an issue may be, it is still no more than that — a review.”). Nevertheless, pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, we may take judicial notice of the fact that a filing was made before the PTAB. See, e.g., Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 497 n. 1 (Fed.Cir.1997) (noting that, because the “record before the Board is a public record ... and thus capable of accurate and ready determination by resort to unquestionable sources,” judicial *1313 notice was appropriate). Cognizant of the limits imposed by Rule 201(b)(2), however, we reiterate that we consider only the fact that a Motion to Amend was filed — not the impact of the proposed amendments on the parties’ claim construction and infringement arguments. The latter cannot be “accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed.R.Evid. 201(b)(2). Moreover, the district court’s ability to address the Motion to Amend in its ruling denying a stay of its proceedings pending appeal supports our consideration of the fact that VA filed proposed claim amendments because we are not faced with the uncomfortable task of doing so for the first time on appeal. Cf. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).
Another preliminary issue concerns the relationship between the first and fourth factors. We agree with the district court that there is a great deal of overlap between the parties’ arguments with regard to these two factors. We note, however, that the simplification of the issues factor and the burden of litigation factor are listed separately in the statute. Thus, even when both factors point in the same direction — in favor of or against the stay— they continue to be separate, individual factors which must be weighed in the stay determination. We cannot, as VA requests, collapse the four-factor test expressly adopted by Congress into a three-factor test.
We conclude that the district court clearly erred jn finding that the first factor was neutral or slightly against a stay, and that the fourth factor weighed only slightly in favor of a stay. We hold that these factors strongly favor a stay in this case. The district court erred as a matter of law to the extent that it decided to “review” the PTAB’s determination that the claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. Under the statutory scheme, district courts have no role in reviewing the PTAB’s determinations regarding the patentability of claims that are subject to CBM proceedings.
Indeed, a challenge to the PTAB’s “more likely than not” determination at this stage amounts to an improper collateral attack on the PTAB’s decision to institute CBM review, and allowing it would create serious practical problems. As a preliminary matter, Congress made post-grant review more difficult to obtain than reexamination by raising the standard from “a substantial new question of patent-ability,” 35 U.S.C. § 303(a) (2012), to “more likely than not ... unpatentable,” id. § 324(a). Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB’s decision on the merits of the CBM review. To do so would overwhelm and dramatically expand the nature of the stay determination. If the district court were required to “review” the merits of the PTAB’s decision to institute a CBM proceeding as part of its stay determination, it would undermine the purpose of the stay. When the stay decision is then appealed to this court, we would be required to likewise review the PTAB’s decision to institute a CBM proceeding. This is clearly not how or when Congress intended review of the PTAB’s CBM determinations to take place. See id. § 141(c) (“A party to ... a post-grant review who is dissatisfied with the final written decision of the [PTAB] ... may appeal the Board’s decision only to the United States Court of Appeals for the Federal Circuit.”). The stay determination is not the time or the place to review the PTAB’s decisions to institute a CBM proceeding.[3]
*1314 The district court’s decision regarding the first and fourth factors was based predominantly on its improper review of whether the PTAB was correct in its determination that the claims of the '413 patent were more likely than not invalid. After this review is removed from the calculus, the remaining evidence of record weighs heavily in favor of a stay. We find it significant that the PTAB granted CBM review on all asserted claims of the sole asserted patent. And it determined that all of these claims were more likely than not unpatentable on two separate, alternative grounds. The statute allows for institution of post-grant review if “it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable.” 35 U.S.C. § 324(a). In this case, the PTAB expressly determined that all of the claims are more likely than not unpatentable. This CBM review could dispose of the entire litigation: the ultimate simplification of issues. See Broad. Innovation, L.L.C. v. Charter Commc’ns Inc., No. 03-cv-2233, 2006 WL 1897165, at *8 (D.Colo. July 11, 2006) (noting that “a stay would further the interests of judicial economy and the conservation of the parties’ resources, as well as that of the court” if a reexamination would “dispose of ... litigation entirely”); cf. Procter & Gamble Co. v. Team Techs., Inc., 12-cv-552, 2014 WL 533494, at *4 (S.D.Ohio Feb. 11, 2014) (denying a motion to stay and noting that “in addition to the 11 claims that Plaintiff has asserted in this case that are also at issue in the [inter partes review proceedings], the remaining 16 asserted claims are not at issue in any [inter partes review]”); Cognex Corp. v. Nat’l Instruments Corp., No. 00-442, 2001 WL 34368283, at *2 (D.Del. June 29, 2001) (denying a stay pending reexamination in part because the complaint alleged “a variety of claims which are not linked to the patent infringement claim, including claims of copyright and trademark infringement and unfair competition, all of which require a trial”). This weighs heavily in favor of granting the stay. We reach this conclusion without needing to consider the fact that VA moved in the CBM proceeding to amend claims of the '413 patent. This fact, if considered, could only weigh further in favor of granting the stay so as to avoid unnecessary claim construction of what could potentially be a moving target in terms of claim language.
VA’s position that Salesforce’s decision to save two pieces of its important prior art for district court proceedings instead of placing it before the PTAB has reduced efficiencies is not without support. The simplification argument would be stronger if all of the prior art or relevant invalidity issues were in the CBM review, as this would entirely eliminate the trial court’s need to consider validity in the event that some claims survive CBM review. In this case, however, where CBM review has been granted on all claims of the only patent at issue, the simplification factor weighs heavily in favor of the stay. If Salesforce is successful, and the PTAB has concluded that it “more likely than not” will be, then there would be no need for the district court to consider the other two prior art references. This would not just reduce the burden of litigation on the parties and the court — it would entirely eliminate it.[4]
*1315 Failure to include other known prior art in the CBM petition could, as we will discuss below, create a potential tactical advantage for Defendants that would weigh against a stay under the third factor. Cf. Gladish v. Tyco Toys, Inc., 29 U.S.P.Q.2d (BNA) 1718, 1720, 1993 WL 625509, at *2 (E.D.Cal.1993) (observing that the district court “is the only forum for a complete consideration of [the defendant’s] evidence of invalidity” and noting that this fact disfavors a stay pending reexamination); see also Enprotech Corp. v. Autotech Corp., 15 U.S.P.Q.2d (BNA) 1319, 1320, 1990 WL 37217, at *1 (N.D.Ill.1990). We also agree with VA that Defendants’ arguments regarding customers and third parties were not raised before the district court and are therefore waived. Nevertheless, on balance of the evidence in the record, we conclude that the first and fourth factors heavily favor a stay.
III. Factor (B): Whether Discovery Is Complete and Whether a Trial Date Has Been Set
The court found that the timing factor favored granting a stay because the parties had not yet filed their joint claim construction statement, the deadline to complete fact discovery was more than six months away, and jury selection was not until November 2014. VirtualAgility, 2014 WL 94371, at *5; see Docket Control Order, VirtualAgility Inc. v. Salesforce.com, Inc., 13-cv-00111 (E.D.Tex. Aug. 30, 2013), ECF No. 91. But it concluded that “the benefits of a stay at this relatively early stage of the proceedings are outweighed by various other considerations as discussed elsewhere herein.” VirtualAgility, 2014 WL 94371, at *5.
Defendants argue that the district court correctly concluded that the early stage of the litigation favors a stay. Defendants contend, however, that the district court did not weigh this factor heavily enough in favor of the stay because it erroneously considered the case’s status at the time it ruled on the motion rather than at the time when the motion was filed — seven months earlier. They argue that, when considering a motion to stay, it does not make sense for a district court to take into account its added familiarity with the case developed during the pendency of the motion. Defendants note that, at the time of the filing, there was no date for jury selection and no discovery had taken place.
VA counters that the district court correctly evaluated the status of the case on the date when it ruled on the motion rather than when the motion was filed because there was no indication that the PTAB would initiate CBM review when Defendants moved for a stay. VA notes that, at the time the district court ruled on the motion to stay, the parties were involved in fact discovery and were preparing for a claim construction hearing, which, it contends, indicates that the case was at an advanced stage. VA thus argues that the timing factor is neutral.
We hold that the timing factor heavily favors a stay. We note at the outset that it was not error for the district court to wait until the PTAB made its decision to institute CBM review before it ruled on the motion. Indeed, while some district courts ruled on motions to stay before the PTAB granted the petition for post-grant review, see, e.g., Intertainer, Inc. v. Hulu, LLC, No. 13-cv-5499, 2014 WL 466034, at *1 (C.D.Cal. Jan. 24, 2014), others have *1316 waited until post-grant review was instituted, and still others denied as premature the motion to stay without prejudice to refiling after institution of post-grant review, see, e.g., Checkfree Corp. v. Metavante Corp., No. 12-cv-15, 2014 WL 466023, at *1 (M.D.Fla. Jan. 17, 2014). We express no opinion on which is the better practice. While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted.
In this case, the stay motion was filed in May 2013, almost immediately after Sales-force had filed its CBM petition with the PTAB. The PTAB granted the petition in November 2013. The district court denied the motion to stay in January 2014. As noted above, we see no error in the district court’s decision to rule on the stay motion after the PTAB rendered its decision on the CBM petition. Furthermore, a district court is not obligated to “freeze” its proceedings between the date that the motion to stay is filed and the date that the PTAB decides on the CBM petition. Of course, the court should make every effort to expeditiously resolve the stay motion after the PTAB has made its CBM review determination. To do otherwise would undermine the intent of Congress to allow for stays to prevent unnecessary duplication of proceedings.
As for the proper time to measure the stage of litigation, district courts have adopted the date of the filing of the motion to stay. See, e.g., Norred v. Medtronic, Inc., No. 13-2061, 2014 WL 554685, at *2 (D.Kan. Feb. 12, 2014) (“The Court finds that this case is still in its early stages, with the Scheduling Order entered only a few months before this motion was filed.”); Cynosure, Inc. v. Cooltouch Inc., No. 08-10026, 2009 WL 2462565, at *2 (D.Mass. Aug. 10, 2009) (“The most compelling justification for denying defendant’s motion to stay is the stage of the litigation at which it was filed.”) (emphasis added); Agar Corp. Inc. v. Multi-Fluid, Inc., 983 F.Supp. 1126, 1127 (S.D.Tex.1997) (articulating the timing factor as “the stage of the litigation at which the motion was filed”). The cases cited by the dissent are not to the contrary and do not hold that the stage of litigation is measured as of any date other than the date of the motion.[5] In two of the cases cited by the dissent, the motion was decided within weeks of its filing, and thus the stage of litigation discussed was effectively the stage of the filing of the motion. Rensselaer Polytech. Inst. v. Apple Inc., No. 13-cv-0633, 2014 WL 201965, at *5 (N.D.N.Y. Jan. 15, 2014) (motion to stay filed in December 2013); TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp., No. 13-cv-2218, 2013 WL 6021324, at *4-5 (N.D.Cal. Nov. 13, 2013) (motion to stay filed in late September 2013). In the third case, it is clear that the district court used the time of the filing of the motion for a stay to evaluate the stage of litigation. Boston Scientific Corp. v. Cordis Corp., 777 F.Supp.2d 783 (D.Del.2011). The court explained that the stage of litigation cuts against a stay because discovery is complete and the trial is scheduled to commence in May 2011. Id. at 788. Although it is not apparent from this portion of the opinion at what time the stage of litigation was measured, the district court later made clear that it looked at the time of the filing of the motion: “Cordis’ motion for *1317 stay was filed on September 23, 2010, nearly one year after the untimely request for reexamination was made. As noted above [in the ‘Status of litigation’ section], a trial date had been set and fact discovery was complete at the time Cordis filed its motion for stay.” Id. at 789.
Generally, the time of the motion is the relevant time to measure the stage of litigation.[6] In this case, we see no error in the district court’s having waited until the PTAB granted the CBM review to rule upon the motion. Whether we consider the May 2013 date, when the motion to stay was filed, or the November 2013 date, when the PTAB granted CBM review, this factor heavily favors Defendants. At the time Defendants filed their motion in May 2013, the case was less than four months old. Discovery had not yet begun and no trial date had been set. As of the date the PTAB granted CBM review, there remained eight months of fact discovery, the joint claim construction statements had yet to be filed, and jury selection was a year away. The litigation at either time was still at its infancy, which favors granting the stay.
IV. Factor (C): Undue Prejudice or Tactical Advantage
The district court concluded that the undue prejudice factor weighed heavily against a stay. It found that, given “credible evidence” that VA and Salesforce were direct competitors, VA would suffer irreparable harm in the form of lost market share and consumer goodwill stemming from the delay in enforcing its patent rights. VirtualAgility, 2014 WL 94371, at *6. The court noted that, for example, VA and Salesforce “took part in the same government bid process at least once.” Id. It determined that, even though CBM review must conclude by November 2014 0ie., one year from institution of the proceeding, see 35 U.S.C. § 326(a)(ll)),[7] VA would still suffer undue prejudice because it is a small company with limited resources and because a likely appeal would impose further delay. The court also found that VA would be unduly prejudiced “because certain identified witnesses are of an advanced age.” Id. at 7. Finally, the court refused to weigh the fact that VA did not move for a preliminary injunction against VA, stating that it was not “in a role to judge the parties’ litigation strategy.” Id.
Defendants argue that the district court erred in concluding that a stay would unduly prejudice VA. They contend that VA will not suffer undue prejudice because the timeframe for CBM review is short. They argue that, in any event, mere delay in having one’s claim adjudicated does not constitute undue prejudice. Defendants argue that VA has not identified any actual risk of fading memories or potentially unavailable evidence. Defendants further contend that VA could be adequately compensated by money damages. They argue that the district court clearly erred in finding that VA and Salesforce competed for the same bid, and that VA has not proven that it would lose market share or goodwill due to a delay in the resolution of its *1318 infringement case. Defendants contend that the fact that VA did not move for a preliminary injunction suggests that VA is not truly concerned about a delay.
VA counters that a delay will subject it to undue prejudice by significantly harming its business. It argues that the fate of the '413 patent claims would almost certainly not be known until after the statutory November 2014 deadline because of the likely appeal of the PTAB’s decision and due to other potential delays. It contends that Defendants’ argument that VA and Salesforce are not true competitors is mer-itless in view of record evidence that the two companies compete in the same market. VA argues that expeditious enforcement of its patent rights against larger competitors like Salesforce is critical to protecting its market share, and that a permanent injunction would thus be “very likely” if it succeeded in proving infringement. Appellee’s Br. 48. It further argues that the district court’s fast schedule made it unnecessary to move for a preliminary injunction. Finally, VA contends that the district court did not err in concluding that loss of evidence during the pendency of CBM review is likely and that, regardless, Defendants waived the argument that loss of evidence was not a concern.
We conclude that the district court clearly erred in finding that the undue prejudice factor weighed heavily against a stay. At best, this factor weighs slightly against a stay. We agree with the district court that competition between parties can weigh in favor of finding undue prejudice. See, e.g., Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., 922 F.Supp.2d 486, 494-95 (D.Del.2013). There is evidence in this record that Salesforce and VA are in the same business space. The record indicates that Salesforce provides cloud-based enterprise-level information technology solutions, J.A. 339, 344, and so does VA, J.A. 315-16. In addition, both companies target public-sector customers. J.A. 316-17, 323-27. But as to evidence of direct competition, the record establishes only that Salesforce was mentioned in a Government Services Administration (GSA) bid, which VA received, identifying Salesforce’s products as the brand name reference products. J.A. 316, 322-37. VA admitted during oral argument, however, that this GSA bid was a small business set-aside, for which Salesforce, a large business, could not compete. J.A. 322; Oral Argument at 24:19-25:32, available at http://oralarguments.cafc.uscourts.gov/ default.aspx?fl&2014-1232.mp3. Thus, there is no evidence in this record that the two companies ever competed for the same customer or contract. We acknowledge, however, that direct evidence of such competition is not required to establish that VA and Salesforce are competitors, especially at such an early stage of the proceedings. See Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1271 (Fed.Cir.1986), abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed.Cir.2008) (en banc) (“[D]irect evidence of a fact is not necessary.”). We do credit the district court’s finding that loss of market share and consumer goodwill is high in the growing market of cloud-computing. See VirtualAgility, 2014 WL 94371, at *6.
Of course, whether the patentee will be unduly prejudiced by a stay in the district court proceedings during the CBM review, like the irreparable harm-type inquiry, focuses on the patentee’s need for an expeditious resolution of its claim. A stay will not diminish the monetary damages to which VA will be entitled if it succeeds in its infringement suit — it only delays realization of those damages and delays any potential injunctive remedy. VA argues that it needs injunctive relief as soon as possible to prevent irreparable harm to its business, indicating that even a one — to *1319 two-year delay in the adjudication of its infringement claims would subject it to undue prejudice because VA and Sales-force compete in the same market. See Appellee’s Br. 49-50; VA’s Response in Opposition to Defendants’ Joint Motion To Stay Proceedings Pursuant to Section 18(b) of the America Invents Act at 10-11, VirtualAgilityc Inc. v. Salesforce.com, Inc., 13-cv-00111 (E.D.Tex. June 20, 2013), EOF No. 72. Although this is not dispositive, we note that VA did not move for a preliminary injunction against Defendants. We acknowledge, as the district court did, that there could be a variety of reasons that a patentee does not move for a preliminary injunction. See, e.g., Nippon Steel & Sumito Metal Corp. v. POSCO, No. 12-2429, 2013 WL 1867042, at *6 n. 6 (D.N.J. May 2, 2013); Nat’l Prods., Inc. v. Gamber-Johnson LLC, 12-cv-00840, 2012 WL 3527938, at *3 n. 5 (W.D.Wash. Aug. 14, 2012); Cooper Notification, Inc. v. Twitter, Inc., No. 09-865, 2010 WL 5149351, at *4 (D.Del. Dec. 13, 2010); see also U.S. Magistrate Judge Morton Den-low, The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard, 22 Rev. Lit. 495, 534 (2003). In this case, VA argues that it did not move for a preliminary injunction because it is a small company with limited resources and that the litigation process would move fast enough to make this unnecessary.
VA’s arguments are rational reasons for not pursuing a preliminary injunction, but the fact that it was not worth the expense to ask for this remedy contradicts VA’s assertion that it needs injunctive relief as soon as possible. We also note that VA, for some unexplained reason, waited nearly a year after the '413 patent issued before it filed suit against Defendants. These facts weigh against VA’s claims that it will be unduly prejudiced by a stay.
To the extent that the district court found that “the added risk of witness loss” could unduly prejudice plaintiff, we do not agree that this record supports a conclusion of undue prejudice. VA asserts that one potentially relevant witness is “over 60” and three others are “over 70.” Since when did 60 become so old? It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice. There is no evidence that any of these individuals are in ill health, and at least one of the older witnesses has already been deposed. In addition, Rule 27 of the Federal Rules of Civil Procedure allows for the perpetuation of testimony when facts suggest that such action may be necessary. This rule gives district courts the authority to grant a petition authorizing a deposition to perpetuate testimony even before a lawsuit has been brought, and also applies when a case is otherwise stayed. See Texaco, Inc. v. Borda, 383 F.2d 607, 609 (3d Cir.1967) (concerns over advanced age of a witness could be alleviated by permitting a deposition to preserve testimony, and did not prevent a stay). The advanced age of witnesses is a factor relevant to potential prejudice, but the prejudice can be reduced, when necessary, by preserving the testimony. We conclude that this record does not support the conclusion that VA would be unduly prejudiced by the stay.
Finally, the district court did not find that a stay would give Defendants a clear tactical advantage, and we agree. There is no evidence that Defendants possessed a “dilatory motive,” which would have pointed against a stay. See, e.g., Market-Alerts, 922 F.Supp.2d at 495-96. In fact, Salesforce filed its CBM petition less than four months after VA instituted this infringement action and moved to stay the district court proceedings almost immedi *1320 ately after filing the petition. To the district court, VA argued that Salesforce “could have used but deliberately and tactically withheld from the post-grant proceeding” the so-called “Oracle Projects” prior art. VA’s Response in Opposition to Defendants’ Joint Motion To Stay Proceedings at 1. Defendants responded that Salesforce did not include Oracle Projects in the CBM petition because it is “a proprietary software system, not strictly a printed publication of the type typically considered by the PTO,” and would require testimony from “live third party witnesses at trial.” Defendants’ Reply In Support of Motion To Stay at 4, VirtualAgility Inc. v. Salesforce.com, Inc., 13-cv-00111 (E.D.Tex. July 1, 2013), ECF No. 74. Defendants also indicated that they had difficulties in obtaining evidence in connection with another piece of prior art “of particular importance” not used in CBM review, “Tecskor product,” necessitating a letter of request for international judicial assistance from Canada from the district court. Oral Argument at 42:13-45:26, available at http://oralarguments. eafc.useourts.gov/default.aspx?fl&2014-1232.mp3; VirtualAgility Inc. v. Sales-force.com, Inc., 13-cv-00111 (E.D.Tex. Nov. 7, 2013), ECF No. 104; see VirtualAgility, 2014 WL 94371, at *3. In some circumstances, a defendant’s decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay. Even though the “splitting” of prior art is allowed by statute in the sense that litigation estoppel does not attach to art that could have been, but was not, raised in CBM review, such behavior can still give the movant a clear tactical advantage within the meaning of § 18.[8] This record does not establish such a clear tactical advantage given the uncontradicted evidence that, at the time Salesforce filed its CBM petition, it did not have the evidence necessary to include the Oracle Projects and Tecskor prior art. Given these unusual circumstances, we conclude that there is no clear tactical advantage to Defendants of granting the stay.
On this record, the evidence of competition is weak and the patentee’s delays in pursuing suit and seeking preliminary in-junctive relief belie its claims that it will be unduly prejudiced by a stay. We conclude that the district court clearly erred in concluding that undue prejudice here weighs heavily against granting the stay. At best, under the clear error standard, this factor weighs slightly against a stay on this record.
* * * * * *
Three of the four factors weigh heavily in favor of a stay in this case: simplification of the issues and streamlining of the trial, whether discovery is complete and a trial date has been set, and reduction of the burden of litigation on the parties and the court. The undue prejudice factor, at best, weighs slightly in favor of denying a stay. On this record, we conclude that the district court abused its discretion when it denied the stay.
Conclusion
We reverse the district court’s order denying Defendants’ motion for a stay of the district court proceedings pending CBM review and remand with instructions to grant the motion. This decision moots Defendants’ motion to stay district court proceedings pending appeal.
REVERSED
*1321 Costs
No costs.

. When we refer to "Defendants,” we mean all defendants-appellants. When we refer to "Salesforce,” however, we mean only "Salesforce.com, Inc.”

. As the petitioner in the CBM proceeding, Salesforce is estopped from asserting at the district court that the '413 patent claims are “invalid on any ground that [it] raised during the ... proceeding.” AIA § 18(a)(1)(D). Although this provision does not apply to the other, non-petitioner defendants in this case, "all other defendants will agree to this same scope of statutory estoppel” if a stay pending CBM review is granted. Defendants’ Joint Motion To Stay Proceedings at 8.

. It would also be inappropriate for the district court to evaluate the potential success of *1314 an APA challenge to the PTAB’s determination that the '413 patent is a "covered business method patent" when analyzing whether CBM review will simplify the issues and reduce the burdens on the parties and the court. Like the district court’s validity analysis, this inquiry would amount to an improper collateral attack on the PTAB’s decision to institute CBM review.

. We note that, while the same pieces of evidence can often relate to both the first and the fourth factors as they do here, this may not always be the case. While simplifying issues would as a general matter always reduce the *1315 burdens of litigation on the parties and the court, the reduced burden of litigation factor may implicate other considerations, such as the number of plaintiffs and defendants, the parties’ and witnesses' places of residence, issues of convenience, the court’s docket, and in particular its potential familiarity with the patents at issue.

. The dissent is correct that some cases discuss the time of the motion in conjunction with the prejudice factor because those cases were considering whether defendants’ delays in seeking a stay would unduly prejudice the plaintiff — an entirely different issue. None of those cases suggests, however, that the stage of the litigation should be anything other than the time of the filing of the motion.

. While district courts should generally consider "whether discovery is complete and whether a trial date has been set" as of the date of the stay motion, there was no error in also taking into account the stage of litigation as of the date that CBM review was granted. Similarly, the district court may consider evidence that develops after the date of the stay motion — for example, the fact that the PTAB granted the CBM petition, any claim amendments proposed or entered in the post-grant proceeding, further evidence of competition, and so on — -as it pertains to the other three factors.

. This period may be extended by no more than six months "for good cause shown.” 35 U.S.C. § 326(a)(ll) (2012).

. We note, however, that it may not be necessary, or even prudent, in some situations for the petitioner to provide all known prior art, no matter how irrelevant or redundant, to the PTAB during CBM review. Failure to advance irrelevant or redundant prior art would not demonstrate a clear tactical advantage.